And we'll call case number four. Call 8-1510. Member Pleasance v. City of Chicago. Good morning, Your Honor. Carrie Maloney-Layton on behalf of the City of Chicago and Officer Weems. May it please the Court. Your Honors, the Circuit Court ordered that the trial in this case be limited to the damages that Michael Pleasance's family incurred as a result of his death. Ms. Pleasance's counsel ignored that limitation, and as a result, the jury heard inflammatory and irrelevant rhetoric about the culpability of Officer Weems. The result was a humongous $12.5 million verdict that was grossly excessive in light of the uncontested evidence regarding the contributions that Michael would have been able to make to the family. This morning... Let me ask you a question regarding those comments that counsel made. How did he justify them? I'm sorry, Your Honor? How did he justify them? Your Honor, he attempted to justify them on the grounds that because the Court was going to give an instruction regarding Wilfrem Watton, that any commentary about Wilfrem Watton or extrapolation from that comment... And that's my next question. Did the City offer an alternative instruction that did not include the Wilfrem Watton language that might have allowed counsel to reiterate that very same language? Our position, Your Honor, was that Wilfrem Watton, the words themselves, were one thing. But giving the definition of Wilfrem Watton was entirely inappropriate because the jury had no reason to have to decide anything about the conduct itself. What if he had read the instructions several times? What if he had read the instructions that are going to be given to the jury? And then made comments after reading those without repeating those words? Isn't that proper? We would not have had any objection to the Court, to counsel, reading proper instructions. But there was no need to read the definition of Wilfrem Watton because there was no evidence... Doesn't that go to the discretion of the trial judge? The trial judge decides what he will allow based on either the evidence or the instructions that have been decided are proper. The trial court does have discretion to instruct the jury based on the evidence. But that's the key point, Your Honor. In this case, there was no evidence concerning Officer Weems, his culpability, anything about the incident. The judge has limited the trial to damages. Damages are only about the money, the goods, the services, the society that the decedent would have provided to his family unit. But he wanted to give context to his argument. And the context is that there was a finding that the officer engaged in Wilfrem Watton conduct. There was an admission that the city was liable for the death and that the conduct was Wilfrem Watton. But Wilfrem Watton encompasses a range of conduct ranging from utter indifference all the way up to actual or deliberate intent to harm. There was no finding that Officer Weems intended to harm Michael. To the contrary, the city... And is that your position in terms of explaining the excessive judgment as you've characterized it? Our position regarding the excessive judgment is that because there was evidence of both... There was considerable evidence about the negative contributions that Michael would have been able to make to his family, in addition to the positive, which we acknowledge. There was evidence of positive. We're not discounting that. What we submit is that the jury discounted the negative evidence because of the rhetoric of counsel. And counsel encouraged the jury to be shocked, appalled, and angry at what he characterized as the breach of the trust with the community, the gunning down of Michael. And falsely claimed that Officer Weems had admitted to having an actual or deliberate intent to harm Michael. And encouraged the jury to use its verdict to send a message to the community that it would not accept a police officer's willful and wanton killing of a member of our society. In light of that fiery rhetoric, the jury discounted the negative and only focused on the positive. That is what we submit resulted in a $12.5 million verdict. The $12.5 million verdict does not account for the negative. This error, this commentary was, the problem with it was compounded by the court's instruction on willful and wanton conduct. Because that led the jury to believe that the definition of willful and wanton conduct was relevant to its deliberations. Otherwise, why would the court? That was the basis for my initial question. When you say this problem was compounded by the instruction, are you saying that the instruction as phrased was error? And if it was error, did you preserve it? We are saying, yes, Your Honor, we are saying the instruction that we're challenging is not the initial instruction that Ms. Pleasance's counsel focused on in her brief about that 23.01. We're not taking issue with that. We are taking issue solely with 14.01, which is the definition of willful and wanton conduct. We don't dispute that the jury needed to be told what happened, something happened. And the court could have told the jury, Officer Weems shot Michael, has conceded that, accepted liability for that, it's willful and wanton conduct, but did not need to then define what willful and wanton conduct meant. Because there was no issue for them to decide that required an understanding of that definition. That is the Duncan case, and that is also Bradley v. McNamara. When it's reversible for a court to instruct the jury on an issue that's not relevant to its deliberations. In this case, the instruction, utter indifference, conscious disregard, actual intent to harm, led the jury to think that was relevant to its deliberations. Counsel did everything in his power to encourage that by stressing again and again that this conduct represented an actual or deliberate intent to harm Michael and that the jury should send a message with its verdict to the community that it was not going to accept this kind of conduct. Let me ask you, didn't the circuit court judge enter a motion to eliminate a limitation on argument and objections were raised in accordance with that and sustained on occasion, overruled on others? Wasn't that sufficient to address your concerns? No, it wasn't sufficient. Yes, there was a motion to eliminate that was supposed to prevent counsel from overuse of willful and wanton, and in particular overuse of send a message to the community, and that was in the motion to eliminate as well. But counsel disregarded that, and yes, the court sometimes sustained the objections, but other times overruled the objections, and we're asking the court to take a look at the cumulative effect of six, seven comments that we highlight in our briefs, and simply sustaining them was not sufficient to cure the prejudice, especially because... I'm sorry to interrupt, but some of the arguments that you claim are improper, the court actually overruled the objections. That's correct. Some of the arguments were even overruled. Let me ask you regarding that. You say your claim of error addresses Instruction 1401. Are you saying that in the context of this case, either that's an error of law, or is it simply an abuse of discretion based on the prejudice your client suffered? Your Honor, this court, there is precedent that the jury, that it's reversible error for the court to give an instruction that has no basis in the evidence. That's great. So what kind of standard of review do we apply? Well, it is an abuse of discretion standard as to what the judge determines is shown by the evidence. But in this case, there is really no dispute, because there is no evidence. Even Pleasance's counsel has conceded that no evidence was admitted concerning the conduct, the incident. The trial was limited to damages. And therefore, it could only be an abuse of discretion to instruct the jury on an issue about which there was zero evidence because of the court's own limitation of the trial. The 14.01, the language of the instruction, led the jury to believe that there was something to be done with that. And that's a natural result, because the jury being instructed by the court, of course, is going to think there's a reason for the instruction. In addition to our arguments concerning the new trial, we also argue that this court is empowered to order a remittiture of the verdict. And the remittiture would be appropriate here  And when you say that, are you suggesting that we come up with a figure? Or are you simply suggesting that we remand it to the circuit court for it to come up with a figure presumably lower than was entered by the jury? And how much lower? Right. What's the standard? Right. There are, actually, this court can do it either way. There is precedent for the authority that stands for the proposition that this court can order. Draw a figure for us. We submit that based on the evidence at trial. Now, we're taking into account both the positive evidence and the negative evidence. Do you want to draw out a figure for us? I will draw out a figure for you, Your Honor. No, he said do you want to. I don't necessarily want to, but I'm happy to do so. You're under no obligation to answer my question. Okay. Well, I mean, I will say this, Your Honor. We told the jury ourselves during closing argument that a fair figure, in our view, would be a million dollars. Okay. The first test for remediator is whether there was, the verdict represents fair and reasonable compensation for the loss. We submit it does not because it doesn't account for the negative evidence. And even, the negative evidence is really uncontested. Michael had significant problems that would have made it difficult to make positive contributions to his family's relationship financially. He was a high school dropout. He was in prison for some time. He had intellectual limitations that are uncontested. He was unable to manage money and was completely financially dependent on his family. As a result of these characteristics, it was not likely that he would have been able to make positive financial contributions. In fact, it's uncontested he would have continued to be a financial burden to his family probably for the rest of his life. In addition, there was evidence concerning the love between his family, between his mother and himself, but there was also evidence concerning his tendency to stay up late and to not be present at all times. So all that evidence should have been weighed by the jury in the calculus. The other two tests are satisfied because we submit the verdict was inflated by passion and prejudice that got stirred up by counsel's remarks and we submit that the amount was excessive and therefore should shock judicial conscience in light of what counsel was able to slip in in a trial that was limited to damages. And if there are no further questions, I would ask to reserve a couple minutes for rebuttal. You'll have one. Thank you, Your Honor. Mr. Ratzak? Let's start with the biggie. Good morning, Your Honor. It's Michael Ratzak on behalf of the plaintiff's athlete. All right. Let's start with the biggie. How do you justify Instruction 1401? 1401 is justifiable because 1401 provided the jury with the definition of willful and want conduct. Did the jury need it? Yeah. And they needed the definition of willful and want conduct because it's not a phrase that is commonly understood. Why did the phrase make any difference at all? What if it had been negligent? I'm moving there in my own indirect fashion, Your Honor. I will answer the question. I have learned that in my career. Because it's a statutory definition of the Tort Immunity Act and the word was given to them in IPI 2301. That's the basic case. The word had been given to them. And my point there, Your Honor, is that's not an issue. I thought that was an issue. They made clear on reply that they did not object to 2301. They agreed to it. So the jury was properly told willful and want conduct was what was done here. And the reason for that was to give a context. Otherwise, they thought it was going to be awkward. Okay. Were they told that before liability can be imposed, there must be a finding of willful and want conduct? And for that reason, and that reason alone, you're being instructed as to what willful and want conduct means because it gives context to the cause of action. But that's all it does. It doesn't elevate damages or it doesn't elevate liability. It doesn't elevate culpability. It simply explains how this case got to you, the jury. I agree. There would have been a possibility that the city could have offered that kind of instruction. But they're the one that wants the instruction. Obviously, it's their bird to ask for instruction. It would be a limiting instruction on the effect of 2301, but they didn't do that. To the extent that Your Honor suggested that 2301 and willful and want doesn't affect damages, it can in the sense that without context, and that's the point we tried to make in the later part of our brief. Did the judge rule that 2301 goes to damages? No, he did not. Did the plaintiff offer 2301 to go to damages? No. In a sense, we did, Your Honor. I want to make that clear. The point is that without 23.01 to explain that there was fault, not so much willful and want, but somebody is at fault, the damages could be affected because if the jury isn't given some context, they could just, in this situation, they would more readily think somebody died at the hands of a police officer. They're more likely to think something that I, as the person who was shot, caused this to happen. And that's going to affect damages. That's our point. I would think that would be the kind of prejudicial information. It's certainly a prerequisite. It certainly has gone on, but it doesn't necessarily go directly to damages. And I do have a question regarding 23.01. Even though it hasn't been raised, I do notice that there's an absence of willful and want as insertable language. In 23.1? Other fault language. If it says other fault and willful and want, we think qualifies as other fault. You put a product liability situation in there. How about unintentionally killed the deceased in the course of trying to arrest someone else and therefore admits the liability for the death of the deceased? If the city asked for that instruction, I'd have to make a different argument. But I'm not going to back off from that. If they asked for that instruction, our attorney would have been up off the seat because telling the jury it was an unintentional discharge is not telling them about fault. Some place in there has got to be fault. Because it affects the juror's view of what to do in this case. Well, let's go back to 23.01. As the people in the veneer did, before they were told about fault, if Your Honors remember, they all had problems with, well, it must be Michael's fault. That was what they all said. That's why we put that in there. These jurors didn't have that problem. That's because they got 23.01. And by the time they went to the jury room, they knew there was fault on one side of the picture. It's not a clean – it's not a – I'm sorry. I'm going back to 23.01. And 23.01 does say that the defendant admits fault. Now, I thought your argument just now was that that's what the jury needs to hear to make sure that they understand that fault has been admitted. Why do they have to know that fault was established by way of willful and wanton conduct as opposed to he was – the defendant admits that he engaged in fault – other fault conduct? Why – he admits that he engaged in the – Another fault – because he did admit that he engaged in other fault conduct, the defendant officer in this case admitted that he engaged in willful and wanton conduct. He's got the very complex answer to the complaint, but they finally caved in and said it's willful and wanton conduct. Well, I guess my – two points. One, if that's what they admit, we get to take advantage of that, too. If they wanted to change the words in there, they could have substituted another 20 – I can conceive of another 23.01 instruction that would satisfy both sides. But that's not my job – not my trial lawyer's job to do it. It's their job. That's what they did. Let's go to one of the points that the city was making, and I want to know whether you agree with it, that when you're discussing willful and wanton conduct, the range of conduct that can fall under that category is very broad. And unless you give context to the actual fault conduct in this particular case, there's a chance that the jury can decide that it's at the high end of that range  Very close to intentional conduct, I think. And to the extent that you're arguing that willful and wanton conduct goes to damages, doesn't that go to damages? Doesn't that explain a high-end damage award? And my response to that is that if that was their concern, then they needed to restructure 23.01 in some way to stop that. But more to the point, there's no reason for the jury – from what we saw with the denial of complaint – Let me jump on that. Maybe they graduated. Let me jump on the opening, that there's no reason for the jury. The city's arguing that there is reason for the jury, and it's counsel's comments during closing arguments. And opening statements. And when we get back to that, Justice Lampkin said, well, some of them were overruled. Only one of them was overruled. Three of them – there's six that issued, three were sustained, two had no objections to them at all. Only one was overruled early on. And I defended each one in the brief. The gunned down, the objection was sustained. By the way, the reply brief said that the cases we cite for the proposition that sustaining an objection cures the error don't apply because the judge here did not direct the jury to disregard the question and the answer. And my simple response is, you have to ask the judge to do that. He's not carrying your water for you, which is the problem with most of what's here. The motion in Lemonade said not to use the terms murder, homicide, because the city was concerned that when the medical examiner got on the stand, there was going to be – the jurors were going to think he was murdered. It didn't say gunned down. Gunned down and shot. Gunned down, obviously, was a term picked. We don't pick our terms. This is not a tea party. We're picking terms that help us. I'm not going to suggest others. But nonetheless, it was sustained. Every one along the way was sustained. The one they didn't object to is the one that they complain of in the reply brief. That's apparently their main one. And it does not say, send a message to the community. I've read it over and over. I'm sure your honors have. It doesn't even come close to that. It's a very well-phrased question to stay inside the borders of the law that suggests to them that the responsibility is on you. We're waiting to see what you do here. And I think that's a legitimate question. That's why the jurors are there. I mean, the city's argument isn't all that much different. And another reason that they may not have objected is, I've seen counsel do this. If I'm a little bit close to the edge in my argument, it's just like the traveler is sitting there waiting to turn that sword around and use it back against me. They didn't do that. I don't want to jump in your argument. But you obviously have been here many, many times and are familiar with large awards. What's your response to the remitter to request? Twofold. Threefold. One, comparison is very difficult. The courts have said not to do it. Two, the argument that the city made to the jury is, in part, if the honors think about it, they blamed the mother. And blaming the mother, they said, this mom did a bad job. They took postpartum depression into play. This mom meant the child was unguided in his early years. That's not what anybody said. She didn't know about his drinking. She was in school instead of watching him. That has nothing to do with her loss now. And I would think the jurors would have been just as smart to figure that out as I did. What she did raising him, I don't care if she was the worst mom. What's her loss like today? Today, according to the evidence, other than her one son, she's not doing much. She had her son. And ironically, because of his weaknesses, they were very bonded close together. And so she's got nobody. And the jurors, I'm sure, I would think jurors would take that into consideration. Secondly, if anybody's ever set a valuation on a case, it's the city of Chicago. Your honors have heard this. They've heard it. They hate it when we say it. They settled the case that we pointed out for $18 million where the status of the deceased individual is just about the same. Now, I'm not supposed to compare verdicts, but they're doing it. And that's not a comparison of a verdict. That's a settlement. They did it without a trial. I suspect the city doesn't pay more in settlement than they think they're going to lose at trial. If anybody's set a valuation target, it's them. If this court was going to buy the remittance or argument, there's no foundation for it. Mikulogic's been reversed. That was a fractured opinion, and I have no idea how to write an opinion that sends it back down other than saying, too much, but we're not telling you how much. That strikes me as a difficult one. And I can usually make a moment. You're not suggesting that the power of a court to order remitter has been dissipated by that case? Mikulogic. I think that's right. I'm Polish, so I call it Mikulogic. It has, in a sense, because the Supreme Court vacated it. Is there language to that effect in the opinion? In the Supreme Court opinion? The Supreme Court opinion very clearly, I believe, vacates the order down below. It's not an accessory or supplemental opinion. I think I might have put that even in the brief. I read it very closely because this topic has come up. Mikulogic as an appellate case is gone. It's a fractured opinion. And even if it's right, if Your Honors recall, the appellate court authoring judge said, when we send it back down, it can't be any more than half of what the verdict was. And that just happens to be right about the number that the jurors gave here. So I can't imagine what a trial court judge is going to do if he's supposed to look at that or she's supposed to look at that for guidance. We didn't get beyond that. It's obviously a large amount of money. And if we had a small amount of money, we'd be unhappy. But if you don't want to have those kinds of amounts of money, you need to try your case better. You need to make objections. You need not to make arguments that cause the jurors to get upset with you. That's not my fault. You shouldn't be able to do that, take advantage of it, and then send us back for a new trial. Unless Your Honors have further questions. Obviously, Your Honors have read the brief. I appreciate your attention.  Just a few quick points, Your Honor. Why shouldn't we take Mr. Ratzak's argument that the verdict is simply explained by less than adequate efforts by the city in addressing the issues that were before the trial court? We disagree with that assessment. I'm sure you disagree with it, but to the extent that there isn't an alternative 23.01, how do we deal with that? We don't take the issue with 23.01. We agree that the jury should be told what happened. They can even be told that it was willful and wanton conduct. What they should not be told, when there is no evidence of it and no issue about it, is that the willful and wanton conduct means an actual or deliberate intent to harm, and then to have counsel suggest that, in fact, that was what Officer Weems had in his mind when he shot Michael. So that's what we take issue with. To start with the last point on the remitted term, where counsel claims we are blaming the mother, and that was our strategy at the trial, and that that somehow resulted... Let's not characterize it as blaming the mother. Was there an argument to that effect before the jury? No, Your Honor. To the contrary. We try to make quite clear, and we, in our briefs, make  that we are not saying that there is no love between the mother and the son. There is an emotional side to this, but the verdict cannot be excessive, especially when it rests solely on that emotional side. The jury in this case considered the emotional positive evidence, but failed to consider the negative evidence. We didn't talk about Michael's faults in order to blame the mother.  impacted his ability to make contributions to the relationship in the future, had he survived. That is the test on a wrongful death case. It's not about how much love there was. It's not exclusively about love. It's about the lost money, goods, services, benefits, and society that the decedent would have provided. That's not just about the close relationship they had. That's about whether there would have been the ability to make a financial contribution. That's about whether there's absence because of imprisonment, or because of drug use, or because of a tendency to stay up late with friends. That doesn't mean that the mother did a bad job. That means Michael would not have been able to make contributions that equal $12.5 million. That's our point about not taking issue with the emotional side of it. Back to the first point about new trial. Counsel said that there was a need for the definition of willful and wanton because otherwise the jury would have thought that Michael was at fault and somehow this would have given context. Well, we submit that that, in fact, is not the case. The jury was told by the judge that this was a trial limited to damages. In fact, there was a jury instruction that said, you will only need to decide damages in this case. They would not have thought that Michael was at fault and not awarded any damages because the judge told them to and not only that, the judge told them we admitted to liability. They would not have been confused. And finally, the city itself told the jury to award $1 million. So the jury would not have been confused and at risk of coming back and saying, we don't think any compensation is appropriate or we're confused. So, unless there are further questions, we submit that the errors that occurred at this trial warrant a reversal and for this court to either order a new trial limited to damages or a remitter of the verdict. Thank you, Your Honor. The case will be taken under advisement.